**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

|  |  |
|---|---|
| IN RE: BLACKBAUD, INC., CUSTOMER DATA SECURITY BREACH LITIGATION | Case No.: 3:20-mn-02972-JMC<br><br>MDL No. 2972<br><br>**STIPULATION AND ORDER REGARDING THE DISCOVERY OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION** |

THIS DOCUMENT RELATES TO: ALL ACTIONS

**WHEREAS**, the parties to this Action (individually a "Party" and collectively the "Parties") mutually seek to reduce the time, expense, and other burdens of discovery of certain hard copy documents and electronically stored information ("ESI"), and to better define the scope of their obligation with respect to producing such information and materials through the entry of a Stipulation and Order Regarding the Discovery of Documents and Electronically Stored Information ("Order" or "Stipulation");

**WHEREAS**, this Order is intended to promote a "just, speedy, and inexpensive determination" of this Action, Fed. R. Civ. P. 1;

**WHEREAS**, this Order does not prevent the Parties from negotiating additional agreements regarding discovery as may be necessary in the course of this Action;

**WHEREAS**, to the extent this Order is silent on an issue, the scope of discovery under Fed. R. Civ. P. 26(b) shall guide the parties;

**WHEREAS**, this Order is intended to govern the discovery of documents and ESI in this Action;

1

**NOW WHEREFORE**, it is on the 15th day of March, 2021, hereby **STIPULATED, CONSENTED TO, AND ORDERED** as follows:

I.    **Definitions –** Unless otherwise noted herein, any capitalized term used in this Order shall have the meaning ascribed to it under the Confidentiality Order that governs this Action.   In addition, the Parties agree to the following additional definitions:

A.    The terms "document" and "documents" are synonymous in meaning and equal in scope to the usage of the term "documents" in Fed. R. Civ. P. 34(a)(1)(A) and shall include electronically stored information.

B.    The terms "electronically stored information" and "ESI" are synonymous in meaning and equal in scope to the usage of the term "electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A).

C.    The terms "Native Format" and "Native File" mean and refer to the format of ESI in which it was generated and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities.   For example, the native format of an Excel workbook is an .xls or .xslx file, the native format of a PowerPoint slide deck is a .ppt or .pptx file, and the native format of a Word document is a .doc or .docx file.

D.    "Hard Copy Document" or "Hard Copy Documents" means any document or documents existing in paper form, or otherwise stored in a manner other than electronically.

II.    **General Agreements**

A.    **Cooperation**.  The Parties agree to meet-and-confer on the topics set forth in Fed. R. Civ. P. 26(f)(3).

B.    **Discoverable Custodians and Non-Custodial Data Sources**.  Within sixty (60) days after filing of the consolidated complaint in this Action, the Parties, including each Plaintiff named in the consolidated complaint, shall provide to all other Parties a list of the key custodians most likely to possess, and non-custodial data sources most likely to contain, documents and ESI relating to the subject matter of this litigation.  This will include a description of each custodian's job title and dates of employment.  The Parties will meet and confer regarding reasonable requests for information regarding potential custodians or electronic sources.  The Parties retain the right, upon reviewing another Party's production of documents and ESI, and conducting other investigation and discovery, to request that files from additional custodians or sources be searched and to meet-and-confer regarding such request.

C.    **Collection**.  Each party shall make best efforts to begin collection of responsive ESI from the custodians and non-custodial data sources disclosed pursuant to Section II.B within fourteen (14) days of disclosure.

D.    **Search Methodology**.  Each Producing Party shall disclose the methods it will use to identify and cull its potentially responsive ESI based on its knowledge and understanding of its own data, the facts and issues involved in the Action, and the Receiving Party's discovery requests.  A Producing Party may apply search terms to appropriate sources and may also conduct a targeted collection of sources likely to contain responsive documents.  The Parties agree to disclose search terms that will be used to cull potentially responsive ESI and to consider reasonable, proportional proposals from Receiving Parties regarding additional search terms, including by providing standard hit reports (number of documents that hit on each term, the number of unique documents that hit on each term (documents that hit on that term and no other term on the list), the total

number of documents that would be returned by the proposed search term list, with and without families).

E.    **Technology-Assisted Review**.  If a Party uses technology-assisted review to cull the documents to be reviewed or produced, the intention to employ this technology must be disclosed to the Receiving Party prior to use.

F.    **Easily Targeted Responsive Documents**.  Specific documents and categories of documents that are relevant to this Action and responsive to a Party's document requests, and that are known to be regularly maintained in a particular location, shall be collected without the use of search terms or other advanced search methodology (*e.g.*, analytics, predictive coding, technology-assisted-review).

G.    **Non-Discoverable ESI**.  Defendant in this Action represents that the following categories of ESI are not likely to contain unique relevant information and are represented to be inaccessible and therefore not discoverable without good cause:

1.  Backup data files that are maintained in the normal course of business for purposes of disaster recovery, including (but not limited to) backup tapes, disks, SAN, and other forms of media, and that are substantially duplicative of data that are more accessible elsewhere;

2.  Deleted, "slack," fragmented, or unallocated data only accessible by forensics;

3.  Random access memory (RAM), temporary files, or other transient data that are difficult to preserve without disabling the operating system;

4.  On-line access data such as (without limitation) temporary internet files, history files, cache files, and cookies;

5.  Data in metadata fields frequently updated automatically, such as last-opened or last-printed dates;

4

6.  Data stored on mobile devices where such data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or cloud storage);

7.  Server, system, network, or software application logs that are unrelated to the claims and defenses in this case, the data incident, or other known data incidents;

8.  Data remaining from systems no longer in use that is unintelligible on the systems in use;

9.  Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report;

10. Files included on the National Institute of Standards and Technology (NIST) List (http://www.nsrl.nist.gov/);

11. Structural files not material to individual file contents (e.g., .CSS, .XSL, .XML, .DTD, etc.);

12. Operating System files that do not store user-created content (e.g., CAT, DLL, DMP, EXE, FON, PNF, OPS, SYS etc.); and

13. Application source code, configuration, and other similar files necessary for the function of an application that do not store user-created content during ordinary use (e.g., BAK, BIN, CFG, DBF, DAT, JS, JSON, JAR, LUA, MSB, RES, WINNT, YTR etc.)

The Parties shall meet-and-confer regarding any other categories or sources of ESI a Producing Party believes in good faith are inaccessible and not discoverable.

H.    **Disaster-Recovery Backup Data**.  Provided that no relevant, responsive, and non-duplicative document or ESI is known to be contained exclusively on backup media, absent a Party's specific written notice for good cause, no Party shall be required to modify or suspend procedures, including rotation of backup media, used in the normal course of business to back up data and systems for disaster recovery purposes.  Absent a showing of good cause (such as the known existence of unique, non-duplicative relevant and responsive documents or ESI), such backup media shall not be searched.

5

### III.    ESI Production Specifications

A.    **Format**.  Except to the extent stated otherwise herein, each Party will produce ESI in the format set forth in Exhibit A.  TIFF files shall be created directly from the original document; a Party may not create a TIFF file from ESI by printing out paper copies of that electronic document and then scanning that paper copy of the ESI.

B.    **Multiple Copies.**  To the extent multiple identical copies of ESI exist in a Producing Party's files, the Producing Party need only produce one such identical copy.  Each Producing Party may remove exact duplicate documents based on hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates.

C.    **De-Duping**.  Each Party shall remove exact duplicate documents based on MD5, SHA-1, or comparable hash values, at the family level.  Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates.  The Parties agree that an e-mail that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an e-mail that does not include content in those fields, even if all remaining content in the e-mail is identical.  Removal of near-duplicate documents is not acceptable.  De-duplication will be done across the entire collection (global de-duplication) and the CUSTODIAN-ALL field will list each custodian, separated by a semicolon, who was a source of that document and the FILEPATH-DUP field will list each file path, separated by a semicolon, that was a source of that document.  Should the CUSTODIAN-ALL or FILEPATH-DUP metadata fields produced become outdated due to rolling productions, an overlay file

providing all the custodians and file paths for the affected documents will be produced within seven (7) days of substantial completion of the document production.

        D.     **De-NISTing.**  ESI collections will be de-NISTed, removing commercially available operating system and application file information contained on the current NIST file list.

        E.     **Zero-byte Files.**  The Parties may filter out documents identified as zero bytes in size and any logo files.

        F.     **Email Threading**.  Email threads are email communications that contain lesser-included email communications that also may exist separately in the Party's electronic document collection.  A most-inclusive email is one that contains unique content and all the lesser-included emails, including attachments, for that branch of the email thread.  Accordingly, the Parties shall be permitted to use email threading to limit the review and production of documents to "inclusive" email families, reducing Producing Party burden without prejudicing any Receiving Party. Receiving Parties may make a reasonable request for the production of specified lesser-included emails contained within produced most-inclusive emails where necessary for use as deposition, brief, or trial exhibits.

        G.     **Parent-Child Relationships**.  Parent-child relationships (the association between emails and attachments) will be preserved.  Email attachments will be consecutively produced with the parent email record.  If an email attachment is Privileged Material, not responsive, or has a technical issue that cannot be resolved, a slip sheet may be inserted in the production.

        H.     **Database Records**.  To the extent that any Party requests documents that are stored in a database system, such as structured data, the Parties will meet and confer regarding the

accessibility of such information and the format of production.  If responsive ESI stored in a database system can be produced in an already existing and reasonably available report form, the Parties will meet and confer as to whether production of the information in such a report form is sufficient.  If an existing report form is not reasonably available or is not reasonably usable, the Parties will meet and confer to attempt to identify a mutually agreeable report form.

I.    **Non-Standard Files**.  Non-standard electronic files include, but are not limited to, source code, transactional data, and proprietary applications not publicly available. Upon reasonable request, the Parties will meet and confer as to a reasonable production format for such files.

IV.    **Hard Copy Production Specifications**

A.    Hard Copy Documents and attachments should be scanned as single-page TIFF images with the load file containing, at a minimum, the following information: Custodian, BegBates, EndBates, BegAttach, EndAttach, Confidential Designation, Redaction, Text Path, and Production Volume.  Where reasonably feasible, Hard Copy Documents should be logically unitized (i.e., distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business.  Where possible, original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape) and the Bates number shall be outside of the portions of the imaged pages containing content.

B.    At the request of the Receiving Party, document pages that have affixed notes, such as Post-it® Notes, shall be imaged with and without the note attached.  Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.

C.      Multi-page OCR text for each document will also be provided.  OCR text files shall be provided as a single text file for each hard copy document, not one text file per page.  The filename itself should match its respective TIFF or, in the case of documents scanned in color, JPG filename.  Notwithstanding the requirements set forth above, absent a showing of good cause, a Party is not obligated to re-scan and re-process hard copy documents that were scanned before the entry of this Order.

D.      If any Party determines that any of the specific requirements in this section impose an undue burden or otherwise present an issue with respect to compliance, the Parties shall meet and confer regarding that issue, including discussing any appropriate resolution of that issue or alternative process.

V.      **Redactions**

A.      The Producing Party may redact from any TIFF image, metadata field, or Native File material that is Privileged Material, is required by applicable law or regulation, or is permitted to be redacted by any other Order governing these cases.   The Producing Party shall identify redactions clearly on the face of any TIFF image, either with "Redacted" or the redaction reason on the face of the document.

B.      If a document that otherwise would be produced in Native Format requires redaction, such document may be produced in TIFF format with an OCR text file in accordance with this Order.  If the Receiving Party finds that a redacted spreadsheet produced in TIFF is not reasonably usable, the Receiving Party may request the document be natively redacted and produced in Native Format.

9

## VI.    Other Issues

A.    **Production Media**.  Unless otherwise agreed, documents and ESI will be produced on optical media (CD/DVD), external hard drive, secure FTP site, or similar electronic format. Such media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive. Volumes should be numbered consecutively (e.g., ABC001, ABC002, etc.).  Deliverable media should be labeled with the name of this Action, the identity of the Producing Party, and the following information: volume name, production range(s), and date of delivery.

B.    **English Language.**  To the extent any document exists in the usual course of business in more than one language, the document shall be produced in English, if available.  If no English version of the document is available, the Producing Party does not have an obligation to produce an English translation of that document.  Notwithstanding the above, if the English translation of the document is used to determine that document's responsiveness, the translation shall be produced.

C.    **Confidentiality Order**.  The terms of any Confidentiality Order issued by the Court are incorporated herein by reference and also govern all productions pursuant to this Order.

D.    **Further Conferral**.  If any Party determines that any of the requirements in this Order impose an undue burden or otherwise pose an issue with respect to compliance, the Parties shall meet and confer regarding that issue, including discussing, as appropriate, an alternative process or processes.  If the issues cannot be resolved, the Parties shall file a joint report with the Court seeking a conference to address the issues.

E.     **Encryption**.  To maximize the security of information in transit, any media on which documents are produced may be encrypted by the Producing Party.  In such cases, the Producing Party shall transmit the encryption key or password to the Receiving Party, under separate cover, contemporaneously with sending the encrypted media.  The Receiving Parties in this matter are on notice that certain data produced may originate from custodians in the European Union and the receiving parties therefore agree to follow the strictest security standards in guarding access to said data.

F.     **Authenticity and Admissibility**.  Nothing in this Order shall be construed to affect the authenticity or admissibility of any document or data.  All objections to the authenticity or admissibility of any document or data are preserved and may be asserted at any time.

G.     **Non-Waiver of Privilege**.  Producing parties are not required to produce documents until a protective order is entered in this matter that includes protections against the waiver of privilege pursuant to Federal Rule of Evidence 502(d).

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

Respectfully submitted,

**MOTLEY RICE LLC**

*/s/ Marlon E. Kimpson*
Marlon E. Kimpson (SC Bar No. 17042)
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Tel: (843)216-9000
Fax: (843)216-9027
Email: mkimpson@motleyrice.com

**DiCELLO LEVITT GUTZLER LLC**

*/s/ Amy E. Keller*
Amy E. Keller
Ten North Dearborn Street, 6th Floor
Chicago, IL 60602
Tel: (312) 214-7900
Email: akeller@dicellolevitt.com

11

**WHITFIELD BRYSON LLP**

*/s/ Harper T. Segui*
Harper T. Segui
217 Lucas Street, Suite G
Mount Pleasant, SC 29464
Tel: (919) 600-5000
Fax: (919) 600-5035
Email: harper@whitfieldbryson.com

*Co-Lead Counsel for Plaintiffs*

**SUSMAN GODFREY LLP**

*/s/ Krysta K. Pachman*
Krysta K. Pachman
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150
Email: kpachman@susmangodfrey.com

**BURR FOREMAN MCNAIR**

*/s/ Celeste T. Jones*
Celeste T. Jones (Fed. ID # 2225)
1221 Main Street, Suite 1800
Columbia, SC 29201
Tel: (803) 799-9800
Fax: (803) 753-3278
Email: CTJones@burr.com

*Co-Lead Counsel for Defendant Blackbaud, Inc.*

   **IT IS SO ORDERED.**

                                            United States District Judge

March 15, 2021
Columbia, South Carolina

# Exhibit A - Document Production Format

Except as provided below, both ESI and Hard Copy Documents files should be produced in image format. Images shall be endorsed with a Bates number at the page level accompanied with text files containing the searchable text and a delimited data load file containing associated document information and metadata for each document.

- Native ESI and paper documents shall be converted to single-page, black and white 300 dpi TIF format image files with Group IV compression and one TIF file per page, with the exception of spreadsheets, audio files, video files, Microsoft PowerPoint files, and Microsoft Word documents with tracked changes in the metadata which shall be produced in native format; and photos and graphic images, which shall be converted to single-page color JPG images, 300 dpi or higher with JPG compression and a high quality setting to reduce degradation of the original image. Each color document image file shall be named with the unique Bates number of the first page of the document followed by the file extension "JPG";

- For documents whose Native Format is a spreadsheet, audio file, video file, Microsoft PowerPoint file, or Microsoft Word document with tracked changes in the metadata, the original Native Files should be produced in addition to a single page TIF placeholder for each document. The placeholder should be endorsed with "Native Format Document," and endorsed with the Bates number assigned to that document. The produced Native File should be named with the Bates number assigned to that document. Any confidentiality or other designations stamped on the placeholder for such a document shall apply to the entire Native File and its contents;

- Notwithstanding the above, except for natively-redacted spreadsheet files, original Native Files need not be produced for documents produced with redactions, regardless of original Native File format;

- The parties will meet and confer regarding the format of production for audio or video files that require redactions;

- Each image file shall be named with its unique Bates number and branded with the Bates number and confidentiality designation (if any) on the face of the image in a location that does not cover up any of the document's original text or images;

- One text file per document which contains searchable text for the document shall be provided for all ESI and scanned paper documents. Extracted full text shall be provided for ESI, and OCR text shall be provided for scanned paper. OCR generated text should only be used for ESI if extracted text is not available or if the document has been redacted. Text files shall be named with the beginning Bates number of the corresponding document and a path to the text file within the production should be provided in the data load file;

13

- An image identification file shall be provided containing a row of information for every image included in the production. The format of the file should be industry standard IPRO format (LFP), Concordance Image format (OPT) or other delimited file format using common ASCII (American Standard Code for Information Interchange) characters for field identification that includes one row of information for each image with fields for image Bates number, relative path to the image, image filename, page number, and document start identifier to designate the first page of a document;

- All document information and metadata for each document shall be produced in a delimited data load file with one row for each document produced and shall include the document information and metadata identified in the table below to the extent it is reasonably available. The format of the file shall be industry standard Concordance DAT file format or a delimited text file that uses ASCII character delimiters as follows: Field Delimiter = ""ASCII (020), Text Quote = "þ" ASCII (254), Multi-Entry = ";" ASCII (059)

<u>Document Information and Metadata To Be Produced</u>

| Field | Data Type | Paper | Native Files & Email Attachments | Email |
|-------|-----------|-------|----------------------------------|-------|
| ProdBeg | Integer - Text | Starting Bates # | Starting Bates # | Starting Bates # |
| ProdEnd | Integer - Text | Ending Bates # | Ending Bates # | Ending Bates # |
| ProdBegAttach | Integer - Text | Starting bates # of document family | Starting bates # of document family | Starting bates # of document family |
| ProdEndAttach | Integer - Text | Ending bates # of document family | Ending bates # of document family | Ending bates # of document family |
| Attachbates | Integer - Text | Bates # range of document and all attachments | Bates # range of document and all attachments | Bates # range of document and all attachments |
| Custodian | Text | Name of person the document was collected from | Name of person the document was collected from | Name of person the document was collected from |
| DupCustodian | Text – paragraph Separate entries with ";" | | All names of people the document was collected from even if removed from production as a duplicate | All names of people the document was collected from even if removed from production as a duplicate |
| Importance | Text | | | Exclamation point or other feature on email denoting high priority |

14

| Field | Data Type | Paper | Native Files & Email Attachments | Email |
|---|---|---|---|---|
| Folder | Text | | File path/folder structure for the original Native File | File path/folder structure for the original Native File. Should include the internal path of messages within email container files |
| FILEPATH-DUP | | | File path/folder structure for any duplicate original Native Files | File path/folder structure for any duplicate original Native Files. Should include the internal path of messages within email container files |
| From | Text - paragraph | | | Sender of message |
| To | Text – paragraph Separate entries with ";" | | | Recipients of message |
| CC | Text – paragraph Separate entries with ";" | | | Copied recipients |
| BCC | Text – paragraph Separate entries with ";" | | | Blind copied recipients |
| Subject | Text - paragraph | | | Subject of message |
| Date_Sent | Date/Time (mm/dd/yyyy hh:mm:ss) | | | Date/time message sent |
| FileName | Text - paragraph | | Name of original file including extension | Name of original file including extension |
| FileExtension | Text | | Extension of original file | Extension of original file |

| Field | Data Type | Paper | Native Files & Email Attachments | Email |
|---|---|---|---|---|
| Date_Created | Date (mm/dd/yyyy) | | Date file was created | |
| Date_LastMod | Date (mm/dd/yyyy) | | Date file was last modified | |
| Title | Text - paragraph | | Title from document metadata | |
| Author | Text - paragraph | | Document author from metadata | |
| Last Saved/Edited By | | | The name of the last person to save/edit the document from extracted metadata. | |
| Confidentiality | Text | Any confidentiality designation asserted on the document | Any confidentiality designation asserted on the document | Any confidentiality designation asserted on the document |
| Tracked Changes | | | The yes/no indicator of whether tracked changes exist in the file. | |
| Is Embedded | | | The yes/no indicator of whether a file is embedded in another document. | The yes/no indicator of whether a file is embedded in another document. |
| MD5 Hash | Text | | MD5 or SHA-1 Hash Value of document | MD5 or SHA-1 Hash Value of document |
| Redacted | | | If a document contains a redaction, this field will display 'Yes'. | If a document contains a redaction, this field will display 'Yes'. |
| NativeLink | Text - paragraph | | Path including filename to the associated Native File if produced (Relative Path) | Path including filename to the associated Native File if produced (Relative Path) |
| TextLink | Text - paragraph | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) |

| Field | Data Type | Paper | Native Files & Email Attachments | Email |
|-------|-----------|-------|----------------------------------|-------|
| ProdVol | Text | Production volume | Production volume | Production volume |